United States District Court
Northern District of California

1
2
3
4
5
6
7

8

## UNITED STATES DISTRICT COURT

9

## NORTHERN DISTRICT OF CALIFORNIA

10

San Francisco Division

11

12   MARIA ESTRADA,

Plaintiff,

13

14   v.

15   WAL-MART STORES, INC.,

16   Defendant.

Case No. 16-cv-04091-LB

**ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS**

Re: ECF No. 14

17

## INTRODUCTION

18       In this employment case, Maria Estrada sued her former employer, Wal-Mart, for wrongful

19   termination and related torts.[1] Ms. Estrada alleges that Wal-Mart Market Asset Protection Manager

20   Jason Darham wrongfully accused her of embezzling $4,000, falsely imprisoned her during a

21   related interrogation, and fraudulently induced her to sign a form acknowledging that she owed

22   Wal-Mart $900.[2] After she signed the form, and allegedly because she signed it, Wal-Mart fired

23   her for "Gross Misconduct — Integrity Issue."[3] As a result, Ms. Estrada brings claims for false

24

25

26   [1] First Amended Compl. ("FAC") — ECF No. 12. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

27   [2] *Id.* ¶¶ 6–21.

28   [3] *Id.* ¶¶ 13, 24.

imprisonment, fraud, wrongful termination, intentional infliction of emotional distress, defamation, and rescission.[4]

Wal-Mart now moves to dismiss Ms. Estrada's First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6).[5] The court can decide this matter without oral argument and so it vacated the hearing. *See* N.D. Cal. Civ. L.R. 7-1(b). The court grants in part Wal-Mart's motion and dismisses Ms. Estrada's claims for wrongful termination and defamation but grants leave to amend. Her other claims survive Wal-Mart's challenges.

## STATEMENT

Ms. Estrada was a Wal-Mart cashier between November 2004 and December 2015.[6] On her last day — the day Wal-Mart terminated her employment — she was summoned to a back office.[7] Ms. Estrada "did not know why she was being summoned, and she did not consent to being interrogated."[8] Yet Market Asset Protection Manager Jason Darham nevertheless interrogated her for approximately one hour.[9]

The interrogation took place "behind a closed door," and Mr. Darham "accused [Ms. Estrada] of embezzling $4,000."[10] Ms. Estrada had "never embezzled any amount at all," though, and Mr. Darham allegedly "knew, or should have known, that [the accusation] was false."[11] Mr. Darham also "told [her] that he had been investigating her for some time and that he knew that she was stealing."[12] This claim, Ms. Estrada maintains, was also false.[13] She "denied stealing $4,000 or any amount whatsoever."[14]

---

[4] *Id.* ¶¶ 6–32.

[5] Motion to Dismiss — ECF No. 14.

[6] FAC ¶ 5.

[7] *Id.* ¶¶ 5, 7.

[8] *Id.* ¶ 7.

[9] *Id.* ¶ 8.

[10] *Id.*

[11] *Id.*

[12] *Id.* ¶ 17.

But Mr. Darham "threatened to call the police if she did not confess [to embezzling the funds], and when she refused to do so, he left the room, apparently to call the police."[15] When he returned, he closed the interrogation-room door and presented Ms. Estrada with a "filled-out 'Reimbursement Acknowledgment Form.'"[16] The form obligated Ms. Estrada to pay Wal-Mart $900.[17] Mr. Darham told her "that she had to sign the Form if she wanted to leave the room."[18] Ms. Estrada, "reasonably believ[ing] that [Mr.] Darham honestly thought that she had been stealing," feared losing her job and being arrested "if she did not do as [he] demanded."[19] She accordingly signed the form "so that she would be allowed to leave," though she did not read it.[20]

After she signed the form, Wal-Mart discharged Ms. Estrada for "Gross Misconduct — Integrity Issue."[21] Ms. Estrada then sued in California state court and Wal-Mart removed the case.[22] She asserts six claims: (1) false imprisonment; (2) fraud; (3) wrongful termination; (4) intentional infliction of emotional distress; (5) defamation; and (6) rescission of the Reimbursement Acknowledgment Form.[23] Wal-Mart moves to dismiss claims one through five under Federal Rule of Civil Procedure 12(b)(6).[24]

*        *        *

---

[13] Id.

[14] Id. ¶ 9.

[15] Id. ¶ 10.

[16] Id. ¶ 11.

[17] Id.

[18] Id.

[19] Id. ¶¶ 12, 19.

[20] Id. ¶ 12.

[21] Id. ¶ 13.

[22] Notice of Removal — ECF No. 1.

[23] FAC ¶¶ 6–32.

[24] Motion to Dismiss — ECF No. 14.

United States District Court
Northern District of California

**GOVERNING LAW**

**1. Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**2. Pleading Fraud with Particularity Under Rule 9(b)**

When fraud—or a claim sounding in fraud—is alleged, a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor*

United States District Court
Northern District of California

*Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (superseded by statute on other grounds)). Rule 9(b)'s heightened pleading requirement serves three purposes: "[1]] to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; [2]] to protect those whose reputation would be harmed as a result of being subject to fraud charges; and [3]] to prohibit plaintiffs from unilaterally imposing upon the court, the parties[,] and society enormous social and economic costs absent some factual basis." *Kearns*, 567 F.3d at 1125 (citations and internal quotations and alterations omitted)).

### 3.  Leave to Amend

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

### 1.  The Litigation Privilege Does Not Bar Ms. Estrada's Claims

Wal-Mart asserts that all of Ms. Estrada's tort claims are barred by the absolute litigation privilege under California Civil Code section 47(b).[25]

"Section 47 establishes a privilege that bars liability in tort for the making of certain statements." *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350, 360 (2004). Under section 47(b), the privilege bars all tort claims (except malicious prosecution) for communications made "[i]n

---

[25] Motion to Dismiss at 12–14.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding

2    authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and

3    reviewable pursuant to [statutes governing writs of mandate]." *Id.* (quoting Cal. Civ. Code

4    § 47(b)). To be privileged, a communication must be "(1) made in judicial or quasi-judicial

5    proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of

6    the litigation; and (4) that have some connection or logical relation to the action." *Silberg v.*

7    *Anderson*, 50 Cal. 3d 205, 212 (1990).

8         Although the statute does not mention pre-litigation communications, "courts have applied the

9    judicial privilege to certain discrete categories of communications made in advance of actual

10   litigation." *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 30 (1997). The privilege

11   has, for example, "long been applied to communications or complaints by citizens to public

12   officials or authorities charged with investigating, prosecuting or remedying alleged wrongdoing."

13   *Id.*; *see Hagberg*, 32 Cal. 4th at 370, 376 (applying the privilege to a call made to the police). To

14   determine whether to apply the privilege to pre-litigation communications, courts have considered

15   four factors: (1) "the communication must have been made preliminary to a *proposed* judicial or

16   quasi-judicial proceeding"; (2) "the verbal proposal of litigation must be made *in good faith*"; (3)

17   "the contemplated litigation must be *imminent*"; and (4) "the litigation must be proposed in order

18   to obtain access to the courts *for the purpose of resolving the dispute*." *Edwards*, 53 Cal. App. 4th

19   at 34–35 (emphasis in original). A good faith proposal of litigation would be privileged, but not a

20   threat of suit used "merely [as] a negotiating tactic and not a serious proposal made in good faith

21   contemplation of going to court." *Id.* at 35. "Good faith" contemplation of is a question of fact. *Id.*

22   at 35 n.10.

23        Here, Wal-Mart's contention is this: Ms. Estrada's tort claims are based on Mr. Darham's

24   allegedly false report to the police that she embezzled $4,000.[26] Thus, according to Wal-Mart, Ms.

25   Estrada's claims are barred because Mr. Darham's communications to the police — even if

26

27

28   _____
     [26] *Id.* at 14.

malicious — are privileged.[27] To support the argument, Wal-Mart urges the court to consider the fact that Mr. Darham called the police — a fact present in Ms. Estrada's original complaint but omitted from the FAC.[28]

But Ms. Estrada's claims do not appear based on Mr. Darham's communications with the police. For example, the false imprisonment claim appears based on her confinement to a closed-off back office and Mr. Darham's *threat* to call the police.[29] It is possible this threat is a privileged pre-suit communication, but, at this stage and as alleged, it is also plausibly akin to a negotiation tactic — *i.e.* to pressure her into signing the acknowledgment form. If he did call the police, that fact may indicate a good-faith intent to propose future litigation — but that is a factual issue better suited for summary judgment. Ms. Estrada's fraud, wrongful termination, and IIED claims are likewise based on Mr. Darham's threat and other representations.[30] And her defamation claim is based on the allegedly false statement that she was fired for "Gross Misconduct — Integrity Issue" and embezzled funds.[31] These communications are distinct from Mr. Darham's call to the police.

At least for now, then, the court denies Wal-Mart's argument based on the absolute privilege in section 47(b).

## 2.  Ms. Estrada States a Claim for False Imprisonment

Ms. Estrada asserts a claim for false imprisonment.[32] Wal-Mart challenges the claim, arguing: (1) Ms. Estrada does not adequately allege that she was "confined"; (2) employers may reasonably investigate employee theft; and (3) the shopkeeper's privilege protects it against a false-imprisonment claim.[33]

---

[27] *Id.*

[28] *Id.* at 10 n.2.

[29] FAC ¶¶ 6–12.

[30] *Id.* ¶¶ 16–26.

[31] *Id.* ¶ 28.

[32] *Id.* ¶¶ 6–15.

[33] Motion to Dismiss at 14–15.

United States District Court
Northern District of California

1    "Under California law, the elements of a claim for false imprisonment are: '(1) the

2    nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an

3    appreciable period of time, however brief.'" *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1169

4    (9th Cir. 2011). Restraint, or confinement, "may be effectuated by means of physical force, threat

5    of force or of arrest, confinement by physical barriers, or by means of any other form of

6    unreasonable duress." *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994) (internal citations

7    omitted). All that is necessary is that a person must be "in reasonable apprehension that she does

8    not have the freedom to leave a particular place." *Dixon v. Home Depot, Inc.*, No. 3:96CV00575,

9    1997 WL 878703, at *5 (S.D. Cal. 1997) (citing *Moffatt v. Buffums' Inc.*, 21 Cal. App. 2d 371

10   (1937)); *see also Parrott v. Bank of Am. Nat. Trust & Sav. Ass'n*, 97 Cal. App. 2d 14, 22–23

11   (1950) ("All that is necessary to make out a charge of false imprisonment is that the individual be

12   restrained of his liberty without any sufficient complaint or authority therefor, and it may be

13   accomplished by words or acts which such individual fears to disregard.") (internal quotations

14   omitted).

15       An employer such as Wal-Mart may have a defense to employees' false imprisonment claims.

16   For example, employers have the right "to reasonably detain an employee suspected of theft, and

17   indeed to discharge an employee — consistent with the employee's contractual or other

18   employment rights — if he or she refuses to cooperate with a reasonable investigation." *Fermino*,

19   7 Cal. 4th at 723. And under the shopkeeper's privilege, "[m]erchants who detain individuals

20   whom they have probable cause to believe are about to injure their property are privileged against

21   a false imprisonment action." *Id.* at 716 (citing *Collyer v. S.H. Kress & Co.*, 5 Cal. 2d 175, 180–81

22   (1936)). "But the question whether [an employer's] actions were reasonable, justifiable, or

23   privileged goes to the factual question *whether* its actions constituted false imprisonment," a

24   question that cannot be resolved on the pleadings. *Id.* at 723, 724 n.8.

25       Here, Ms. Estrada alleges that she was confined for approximately one hour.[34] She was

26   interrogated in a closed room by Mr. Darham, a manager.[35] Mr. Darham accused her of

27

28   _____
     [34] FAC ¶¶ 7–12.

United States District Court
Northern District of California

embezzling $4,000 and threatened to call the police if she did not confess.[36] She further asserts that Mr. Darham left the room, "apparently to call the police," and when he returned, presented her with an acknowledgment form.[37] He told her "she had to sign the Form if she wanted to leave the room."[38] Ms. Estrada was scared of losing her job and of being arrested, and she signed the form "so that she would be allowed to leave."[39] These facts plausibly show that Ms. Estrada was confined to that back-office room.

Wal-Mart's arguments that it was reasonably investigating suspected employee-theft and is protected by the shopkeeper's privilege are inappropriate on the pleadings. These defenses may have merit. But the essence of the FAC is that Wal-Mart's actions were unreasonable and lacked probable cause — *i.e.* that Mr. Darham knew or should have known that Ms. Estrada did not embezzle the money. And as such, these defenses are more appropriately considered at summary judgment.

### 3.  Ms. Estrada States a Claim for Fraud

Ms. Estrada also brings a claim for fraud.[40] Wal-Mart argues that the claim is insufficiently pled because (1) any representation was — by her own allegations — made honestly and without knowledge of falsity; (2) Ms. Estrada could not reasonably have relied on the representations; and (3) she does not allege that she suffered "out-of-pocket" damages.[41]

"The elements of a cause of action for fraud in California are: (a) misrepresentation, (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Davis v.*

---

[35] *Id.* ¶ 8.

[36] *Id.* ¶¶ 8, 10.

[37] *Id.* ¶¶ 10–11.

[38] *Id.* ¶ 11.

[39] *Id.* ¶ 12.

[40] *Id.* ¶¶ 16–21.

[41] Motion to Dismiss at 16.

United States District Court
Northern District of California

United States District Court
Northern District of California

*HSBC Bank Nevada, N.A.*, 691 F.3d 1152, (9th Cir. 2012) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)) (internal quotations omitted).

Here, Mr. Darham represented that he "had been investigating [Ms. Estrada] for some time and that he knew that she was stealing."[42] According to Ms. Estrada, this was false — *i.e.* he was not investigating her and did not know that she was stealing.[43] She alleges that he made these statements to induce her to sign the acknowledgment form.[44] And, "[o]ne reason that [she] signed the . . . Form was that she reasonably believed that Darham honestly thought that she had been stealing."[45] She thought he "felt justified in continuing to imprison her and in calling the police to arrest her," and she believed "that if she did not sign the Form he would continue to imprison her until the police came and arrested her."[46] So, she signed the form and promised to pay Wal-Mart $900.[47] These allegations are sufficient to state a claim for fraud.

Wal-Mart's arguments do not change this conclusion. Ms. Estrada does not allege that Mr. Darham's representations were "honestly" made, but that she reasonably believed he was being honest. And she could reasonably have relied on these representations: even though she knew she was innocent, she did not necessarily know what Mr. Darham believed or how he might act on those beliefs (*i.e.* fire her and call the police). Finally, she sufficiently alleges resulting damages — she promised to pay $900 (and lost her job).

Ms. Estrada's fraud claim survives.

\*       \*       \*

---

[42] FAC ¶ 17.

[43] *Id.*

[44] *Id.* ¶ 18.

[45] *Id.* ¶ 19.

[46] *Id.*

[47] *Id.* ¶¶ 11–13, 20.

### 4.   Ms. Estrada Fails to State a Claim for Wrongful Termination

Ms. Estrada alleges that she was wrongfully terminated in violation of public policy.[48] Wal-Mart challenges this claim because, it argues, she does not allege that her termination violated a public policy and, in any event, does not allege a causal "nexus" between her protected conduct and termination.[49]

Employment contracts in California are generally terminable at will. Cal. Lab. Code § 2922. But "an employer's traditional broad authority to discharge an at-will employee 'may be limited . . . by considerations of public policy.'" *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 172 (1980) (quoting *Petermann v. Int'l Bhd. of Teamsters*, 174 Cal. App. 2d 184, 188 (1959)). Thus, "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Id.* at 170.

"In general, the elements of a claim for wrongful termination in violation of public policy are (1) an employer-employee relationship; (2) an adverse employment action; (3) that the adverse employment action violated public policy; and (4) the adverse employment action caused the employee damages." *Hollie v. Concentra Health Servs., Inc.*, No. C 10-5197 PJH, 2012 WL 993522, at *7 (N.D. Cal. Mar. 23, 2012) (citing *Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 900 (2008) and *Haney v. Aramark Uniform Servs., Inc.*, 121 Cal. App. 4th 623, 641 (2004)). In other words, "the plaintiff must establish the existence of a public policy and a nexus between the public policy and an employee's termination." *Hollie*, 2012 WL 993522 at *7 (citing *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1258–59 (1994)).

For an actionable *Tameny* claim, a relevant public policy must be implicated. To support a wrongful termination claim, the policy must be: "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4)

---

[48] *Id.* ¶¶ 22–24.

[49] Motion to Dismiss at 16–18; Reply — ECF No. 18 at 8.

United States District Court
Northern District of California

1    substantial and fundamental." *Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003)

2    (quoting *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1159 (1998)). The plaintiff bears

3    the burden of identifying the public policy allegedly violated. *See Day v. Sears Holdings Corp.*,

4    930 F. Supp. 2d 1146, 1189 (C.D. Cal. 2013). In California, "public policy cases fall into one of

5    four categories: the employee (1) refused to violate a statute; (2) performed a statutory obligation;

6    (3) exercised a constitutional or statutory right or privilege; or (4) reported a statutory violation for

7    the public's benefit." *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 76, 90 (1998) (holding that a

8    public policy may also be premised on an administrative regulation).

9        Here, there are two issues: first, whether Ms. Estrada adequately identifies a policy benefiting

10   the public and relevant to her termination; and second, whether she pleads the causal "nexus"

11   between that policy and her termination.

12       The court first considers whether she has identified a relevant public policy. In *Hunter v. Up-*

13   *Right, Inc.*, the California Supreme Court held that an employee's claim of fraud and deceit was

14   "not an action to vindicate a broader public interest" for purposes of a wrongful-termination claim.

15   6 Cal. 4th 1174, 1186 (1993). In *Hunter*, Up-Right informed Hunter that his position was going to

16   be eliminated "and that if he did not resign he would be terminated." *Id.* at 1179. Hunter asked to

17   work in another position, but Up-Right refused, and so he "signed a document setting forth his

18   resignation." *Id.* Hunter won at trial on a fraud claim. *Id.* at 1180. But although "fraud and deceit

19   are defined by statute, and [although] fraudulent conduct is generally condemned by society," the

20   statutory prohibitions against fraud did not "concern society at large" in the sense of a wrongful-

21   termination *Tameny* claim. *Id.* at 1186 (internal citations omitted). Wrongful-termination tort

22   damages were therefore unavailable, because "[a] claim of fraud or deceit is essentially a private

23   dispute seeking a monetary remedy, not an action to vindicate a broader public interest." *Id.*

24       Here, Ms. Estrada asserts that Wal-Mart forced her to sign the Reimbursement

25   Acknowledgment Form by false imprisonment and extortion.[50] To evidence Wal-Mart's violation

26   of a "public policy," she points to California Penal Code sections 236, 518, 519, and 522, which

27

28   ───────────────────────────

[50] FAC ¶¶ 22–24.

define and criminalize false imprisonment and extortion.[51] False imprisonment and extortion, like fraud and deceit in *Hunter*, are prohibited by statute and generally condemned by society. But like fraud and deceit, false imprisonment and extortion do not concern society at large, at least not where the wrongdoing was directed against the plaintiff-employee. This is different, for example, from when an employee reports an employer's fraud, extortion, or other wrongdoings against third parties — *i.e.* the public. *See Saba v. Unisys Corp.*, 114 F. Supp. 3d 974, 987 (N.D. Cal. 2015) (noting that "[o]ther courts have recognized that reporting harm to a private third party's interests implicates public policy for the purposes of a *Tameny* claim").

Relying on *Sullivan v. Delta Air Lines, Inc*, Ms. Estrada argues that because false imprisonment and extortion are criminal acts, the statutory policy prohibiting them is intended to benefit the public.[52] 58 Cal. App. 4th 938 (1997). But in *Sullivan*, the court considered only whether the policy of California Labor Code section 1025 — requiring reasonable accommodations for employees voluntarily participating in drug and alcohol programs — was "substantial and fundamental," not whether this policy benefits the public. *Id.* at 942–47. The "substantial and fundamental" element of a "public policy" is primarily intended "to ensure that employers have adequate notice of the conduct that will subject them to tort liability to the employees they discharge." *Id.* at 943 (quoting *Stevenson v. Superior Court*, 16 Cal. 4th 880, 889 (1997)). In other words, to satisfy the requirement, a "constitutional or statutory provision must sufficiently describe the type of prohibited conduct to enable an employer to know the fundamental public policies that are expressed in that law." *Id.* (quoting *Turner*, 7 Cal. 4th at 1256 n.9) (internal quotations omitted). And to this end, the court noted that the potential of criminal sanctions for a violation is a "significant factor" in deciding whether a policy is substantial and fundamental. *Id.* at 945 n.6. But that was not because criminal sanctions necessarily implicate a benefit to the public — that is a different issue. Potential criminal sanctions are significant because due process requirements ensure that criminal statutes are "definite enough to provide a standard

---

[51] *Id.* ¶ 22; Opposition — ECF No. 17 at 12–13.

[52] Opposition at 12–13.

1    of conduct for those whose activities are proscribed," such definiteness providing the requisite

2    notice to employers and making the statutory policy "substantial and fundamental." *Id.* (quoting

3    *People v. Heitzman*, 9 Cal. 4th 189, 199 (1994)) (internal quotations omitted).

4        The potential criminal penalties for false imprisonment and extortion may therefore indicate

5    the policy of those statutes are "substantial and fundamental," but do not necessarily show that the

6    policy inures to the benefit of the public (a different inquiry).

7        Assuming, however, that the policies Ms. Estrada identifies benefit the public, the second issue

8    is whether she satisfies her burden of establishing a causal nexus between those policies and her

9    termination. In *Wright v. Thrifty Payless, Inc.*, a former employee at a Rite Aid pharmacy did "not

10   allege she was fired because of her engagement in a protected activity" and therefore did not

11   "meet the 'nexus' requirement." No. 2:13-cv-01681-KJM-EFB, 2013 WL 5718937, at *6 (E.D.

12   Cal. Oct. 15, 2013). There, Rite Aid accused Wright of "stealing company property," which it

13   allegedly knew "because she had been prescribed similar medications in the past." *Id.* at *2. But

14   Wright had never disclosed her medical history, and thus she alleged Rite Aid obtained her

15   prescription history without her authorization in violation of her privacy. *Id.* Rite Aid fired her and

16   then she sued, alleging wrongful termination in violation of her right to privacy under the

17   California Constitution. *Id.* at *2, *5–*6. The claim failed, though, because the plaintiff did not

18   allege "that she was terminated because she engaged in an activity, or declined to engage in an

19   activity, protected by her right to privacy." *Id.* at *6. The allegations instead focused only on Rite

20   Aid's activity allegedly violating that right, which did not demonstrate "a 'nexus' between the

21   employee's protected activity and the employer's adverse action." *Id.*

22       Here, like the plaintiff in *Wright*, Ms. Estrada's wrongful termination claim focuses on Wal-

23   Mart's alleged wrongdoing (*i.e.* false imprisonment and extortion). She alleges that Wal-Mart

24   fired her because she signed the acknowledgment form,[53] but does not identify how this

25   constitutes "a protected act or refusal to act." *Id.* at *6 ("In cases where California courts have

26   addressed the question whether an employee was wrongfully discharged in violation of public

27

28   ―――――――――――――――――
     [53] FAC ¶ 24.

United States District Court
Northern District of California

policy, there has always been an allegation that the termination was because of the employee's protected act or refusal to act."). Ms. Estrada does not point to any authority supporting this kind of *Tameny* claim.

The court accordingly dismisses Ms. Estrada's wrongful-termination claim, but grants leave to amend.

### 5.  Ms. Estrada States a Claim for Intentional Infliction of Emotional Distress

Ms. Estrada asserts a claim for intentional infliction of emotional distress ("IIED").[54] Wal-Mart argues that (1) California employees cannot maintain standalone emotional distress claims and (2) she does not allege extreme or outrageous conduct.[55]

"Under California law, the elements of an IIED claim are: (1) extreme and outrageous conduct by the defendants with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendants' outrageous conduct." *Anderson v. Louden, LLC*, No. C 13-04159 WHA, 2013 WL 6405825, at *4 (N.D. Cal. Dec. 6, 2013) (citing *Cervantez v. J.C. Penny Co.*, 24 Cal. 3d 579, 593 (1979)). Intentional infliction of emotional distress claims may be preempted by California's Workers' Compensation Act. *See Miklosy v. Regents of University of California*, 44 Cal. 4th 876, 902–03 (2008).

Typically, California employees are limited to workers' compensation claims for injuries "arising out of and in the course of employment." *See* Cal. Lab. Code §§ 3600–3602; *Shoemaker v. Myers*, 52 Cal. 3d 1, 18 (1990). "To be within the scope of employment, the incident giving rise to the injury must be an outgrowth of the employment, the risk of injury must be inherent in the workplace, or typical of or broadly incidental to the employer's enterprise." *Torres v. Parkhouse Tire Serv., Inc.*, 26 Cal. 4th 995, 1008 (2001). The California Workers' Compensation Act is broadly construed, and includes, for example, emotional distress damages resulting from "the act

---

[54] *Id.* ¶¶ 25–26.

[55] Motion to Dismiss at 18–20.

of termination and the acts leading up to termination" because they both "necessarily arise out of and occur during and in the course of employment." *Shoemaker*, 52 Cal. 3d at 20; *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 814–15 (2001). This is true of emotional damages caused by an employer's intentional acts. *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987).

There are, however, at least two exceptions to preemption: an employee can maintain a claim outside of workers' compensation where the employer's conduct: (1) "contravenes fundamental public policy," *i.e.* a *Tameny* claim; or (2) "exceeds the risks inherent in the employment relationship." *Miklosy*, 44 Cal. 4th at 902 (quoting *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 754 (1992)). The court dismissed Ms. Estrada's *Tameny* claim above, and so the first exception does not apply.

Under the second exception, workers' compensation preempts an employee's claims only "when the misconduct attributed to the employer is actions which are a *normal part of the employment relationship*." *Fermino*, 7 Cal. 4th at 712 (quoting *Cole*, 43 Cal. 3d at 160) (emphasis added). An employer's conduct falling outside the "normal" employment relationship may therefore give rise to independent tort liability, for example, where: an employer's conduct has "a questionable relationship to the employment"; an employee is injured while performing services unrelated to "the employment and which would [not] be viewed as a risk of the employment"; or "the employer . . . stepped outside of [its] proper role[]." *Fermino*, 7 Cal. 4th at 713 (quoting *Cole*, 43 Cal.3d at 161). Thus, "certain types of intentional employer conduct [may] bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought." *Fermino*, 7 Cal. 4th at 713–14.

Here, the determination of whether Wal-Mart — acting through Mr. Darham — stepped outside the bounds of the employment relationship is a close, fact-based call. It may turn out Mr. Darham's actions were reasonable and in the ordinary course of investigating and firing an employee suspected of theft. *See Charles J. Vacanti*, 24 Cal. 4th at 821 (noting that the normal relationship includes reasonable attempts to investigate employee theft and related interrogations). The alleged misconduct occurred at the worksite, and the net result (termination) is a normal part

of the employment relationship. *See Miklosy*, 44 Cal. 4th at 902 (workers' compensation is the exclusive remedy where conduct "occurred at the worksite, in the normal course of the employer-employee relationship"). But the course of conduct alleged — *i.e.* that Mr. Darham falsely accused Ms. Estrada of embezzling $4,000, falsely imprisoned her, fraudulently induced her to sign an acknowledgement form, and then fired her — may fall outside the scope of the normal employer-employee relationship and thus avoid workers' compensation preemption. As described elsewhere, Ms. Estrada alleges sufficient facts to support these claims, and because this same course of conduct is sufficient to be "outrageous," Ms. Estrada's claim for IIED survives the current motion to dismiss.

### 6. Ms. Estrada Fails to State a Claim for Defamation

Ms. Estrada asserts a claim for defamation based on the statement that she was fired for "Gross Misconduct — Integrity Issue" and the accusation that she embezzled $4,000.[56] Wal-Mart contends that the statement and accusation were not communicated to others, and even if they were, they are privileged.[57]

To state a claim for defamation, a plaintiff must allege facts showing "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007). A "publication" is a "communication to some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made." *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1179–80 (2000). The originator of a defamatory statement is not normally liable for damage caused by the defamed person's communication of the statement to others. *Ellis v. Starbucks Corp.*, No. 15-cv-3451-PJH, 2015 WL 8293965, at *5 (N.D. Cal. Dec. 9, 2015) (citing *Shoemaker v. Friedberg*, 80 Cal. App. 2d 911, 916 (1947)). But under the "compelled self-publication" exception, self-publication "may be imputed to the originator of

---

[56] FAC ¶¶ 27–30.

[57] Motion to Dismiss at 20–22.

1   the statement if the person [defamed] is 'operating under a strong compulsion to republish the

2   defamatory statement and the circumstances that create the strong compulsion are known to the

3   originator of the alleged defamatory statement at the time it was made.'" *Id.* (quoting *Davis v.*

4   *Consol. Freightways*, 29 Cal. App. 4th 354, 373 (1994)); *see also McKinney v. Cnty. of Santa*

5   *Clara*, 110 Cal. App. 3d 787, 795, 798 (1980). "This exception has been limited to a narrow class

6   of cases, usually where a plaintiff is compelled to republish the statements in aid of disproving

7   them." *Live Oak Publ'g Co. v. Cohagan*, 234 Cal. App. 3d 1277, 1285 (1991). Republication may

8   be foreseeably required, for example, if "a job seeker must tell a prospective employer what is in

9   his personnel file in order to explain away a negative job reference." *Id.* at 1287 (discussing

10   *McKinney*).

11      In *Howerton v. Earthgrains Baking Cos., Inc.*, a former employee adequately pled a theory of

12   compelled self-publication. No. 1:13-cv-1397 AWI SMS, 2014 WL 2767399, at *3 (E.D. Cal.

13   June 17, 2014). There, by oral and written statement, the employer terminated the plaintiff for acts

14   amounting to embezzlement. *Id.* at *2, *3. The plaintiff alleged that the "written termination

15   statement was placed in [his] personnel file with the knowledge that it would be repeated by [him]

16   to potential employers as part of [his] attempt to find new employment." *Id.* at *2. And he alleged

17   that he had indeed "been required to republish these false and defamatory statements . . . to explain

18   the grounds for his termination to potential employers." *Id.* These allegations fell squarely within

19   the compelled self-publication doctrine and the claim survived. *Id.* at *3.

20      Here, unlike *Howerton*, Ms. Estrada does not plausibly allege a theory of compelled self-

21   publication. She alleges that Wal-Mart "knew and foresaw that [she] would be forced to republish

22   to others the statement that she had been fired for "Gross Misconduct — Integrity Issue," and, if

23   questioned, "the accusation that she had embezzled money."[58] She then alleges that she "did

24   republish this statement and this accusation to others."[59]

---

[58] FAC ¶ 28.

[59] *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    But missing from the FAC, unlike *Howerton*, is any indication of to whom Ms. Estrada was

2    forced to communicate the statement and accusation. This is important to her compelled self-

3    publication theory for at least three reasons. First, the foreseeability of her republication depends

4    on who she told. For example, it may be foreseeable that she would tell a prospective employer,

5    but not others. Second, who she told also lends to the plausibility of whether she was "compelled"

6    to disclose the statements — *i.e.* the pressures of telling a prospective employer are different than

7    those encountered with friends or family. Third, her broad allegation that she republished the

8    remarks "to others" does not plausibly support the existence of an *actual* publication — a required

9    element of the self-publication exception. *See Dible v. Haight Ashbury Free Clinics*, 170 Cal.

10   App. 4th 843, 854–55 (2009) ("California cases that have discussed the [compulsion doctrine]

11   have uniformly involved an actual republication."); *Williams v. Salvation Army*, No. 2:14-cv-

12   06138-ODW (PJWx), 2015 WL 685356, at *5 (C.D. Cal. Feb. 18, 2015) (concluding that the

13   publication requirement was not satisfied where the plaintiff asserted only that the "statements

14   were repeated and reviewed by other employees" and provided no "specific instance where this

15   actually occurred").

16   In her opposition brief, Ms. Estrada asserts that "[w]hen an employer fires an employee for

17   theft, it is foreseeable that the employee [*i.e.* Ms. Estrada] will be compelled to tell prospective

18   employers, family, and friends the reason given by the employer for the termination."[60] But this

19   assertion — that she was compelled to tell prospective employers, family, and friends — finds no

20   support in the FAC. (She also does not cite authority for applying the compulsion exception in the

21   case of republication to friends or family.)

22   Ms. Estrada therefore does not plausibly allege that she was compelled to republish the

23   allegedly defamatory statements.[61] The court dismisses the claim but grants leave to amend. The

24   court does not reach the issue of the common interest privilege.

25

26

27   ───────────────
     [60] Opposition at 14.

28   [61] *Id.* at 15.

**CONCLUSION**

The court grants in part and denies in part Wal-Mart's motion to dismiss. The court dismisses Ms. Estrada's claims for wrongful termination and defamation but grants leave to amend. Ms. Estrada's other claims survive.

**IT IS SO ORDERED.**

Dated: October 6, 2016

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California